```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
SCOTT CAWTHON,                                              :
                                                            :
                              Plaintiff,                    :
                                                            :        22-cv-3021 (LJL)
                -v-                                         :
                                                            :        MEMORANDUM &
ZHOUSUNYIJIE,                                               :        ORDER
                                                            :
                              Defendant.                    :
                                                            :
------------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 10/18/2023

LEWIS J. LIMAN, United States District Judge:

Plaintiff Scott Cawthon ("Plaintiff") renews his motion, pursuant to Federal Rule of Civil Procedure 4(f)(3), for an order permitting him to effect alternative service upon defendant Zhousunyijie ("Defendant") by email. Dkt. No. 23. The motion for alternative service is denied.

## BACKGROUND

The Court assumes familiarity with its prior memorandum and order, Dkt. No. 16, but describes the most salient facts, taken from the complaint and assumed true for the purposes of this motion.

Plaintiff is an individual who resides in Texas and is the creator, author, and intellectual property owner of the *Five Nights at Freddy's* series of video games and novels. Dkt No. 1 ¶¶ 2, 10. Plaintiff has registered copyrights in, *inter alia*, several character images. *Id.* ¶ 16. Defendant is a resident of China and sells goods over Amazon. *Id.* ¶¶ 3, 23. It lists its address as 007894haogongyeyuanchuangyedadaozhongduanzonghelouyilou wanzaixian yichunshi, China. *Id.* ¶ 3. Plaintiff alleges that Defendant markets and sells toys through Amazon that copy, embody, or constitute derivative works of Plaintiff's copyrighted characters. *Id.* ¶¶ 25–27.

Plaintiff took steps to effectuate removal of Defendant's offending postings pursuant to the procedures outlined in the Digital Millennium Copyright Act ("DMCA"). *Id.* ¶ 32. On or about March 10, 2022, Plaintiff submitted a complaint to Amazon pursuant to DMCA Section 512(c), informing Amazon of the alleged infringement and requesting that Amazon remove its listings of Defendant's infringing product. *Id*. As required by the DMCA, Amazon did so on or about that same day. *Id.* ¶ 33.

On or about March 29, 2022, Defendant exercised its right under DMCA Section 512(g) to file a counter-notification (the "Counter Notice") with Amazon to dispute Plaintiff's claims of copyright infringement and request that Amazon replace the postings of its products. *Id.* ¶ 34. In its Counter Notice, Defendant certified to the following:

- Its name (Zhousunyijie);
- Email address (effergergrg@163.com);
- Mailing address (007894haogongyeyuanchuangyedadaozhongduanzonghelouyilou wanzaixian yichunshi China);
- Phone number (+8613905526844);
- Its consent to the jurisdiction of any judicial district in which Amazon may be found;
- Its agreement to accept service of process from Plaintiff or his agent; and
- Its statements contained in the Counter Notice were true and correct under penalty of perjury and that any false statements in the Counter Notice could lead to civil penalties and criminal prosecution.

Dkt. No. 1-1; *see also* 17 U.S.C. § 512(g)(3)(D) (requiring a "subscriber"—the alleged infringer—to include in a counter-notification their "name, address, and telephone number, and a statement that the subscriber consents to the jurisdiction of Federal District Court, . . . and that the subscriber will accept service of process from the" copyright claimant if the claimant files suit). Consistent with statutory requirements, the Counter Notice stated:

> You recently provided me with a copy of a Notice of Infringement under the Digital Millennium Copyright Act (DMCA). This letter is a Counter-Notification as

  authorized in &sect; [sic] 512(g) of the DMCA.  I have a good faith belief that the material identified in the Notice of Infringement was removed or disabled as a result of mistake or misidentification of the material to be removed or disabled.  I therefore request that the material be replaced and/or no longer disabled . . . .

  (I) . . . I am located outside of the United States and I consent to the jurisdiction of any judicial district in which Amazon may be found.  *(II) I agree to accept service of process from the person who provided notification under subsection (c)(1)(C) or an agent of such person.*  (III) I have a good faith belief that the material identified in the Notice of Infringement was removed or disabled as a result of mistake or misidentification of the material to be removed or disabled.  (IV) I declare under penalty of perjury under the laws of the United States of America that this Counter-Notification and all statements therein are true and correct.  (V) I ACKNOWLEDGE THAT PROVIDING FALSE STATEMENT IN A COUNTER-NOTICE MAY LEAD TO CIVIL PENALTIES OR CRIMINAL PROSECUTION.

Dkt. No. 1-1 (emphasis added); *see also* 17 U.S.C. § 512(g)(3)(C) (requiring the subscriber to state "under penalty of perjury that the subscriber has a good faith belief that the material was removed or disabled as a result of mistake or misidentification").  As a result of Defendant's Counter Notice, Amazon was required by the DMCA to repost Defendant's product listings unless it was informed by the copyright claimant that the claimant had commenced an action "seeking a court order to restrain the subscriber from engaging in infringing activity."  *See* 17 U.S.C. § 512(g)(2).

  On April 12, 2022, Plaintiff filed this copyright infringement complaint against Defendant.  Dkt. No. 1 ("Complaint").  The Complaint alleges claims for copyright infringement and seeks injunctive relief, actual or statutory damages, an order that the infringing articles in Defendant's possession be destroyed, and attorneys' fees and costs.  *Id.* at 10.

  On the date that the Complaint was filed, April 12, 2022, service of the Complaint, summons, cover sheet, and AO Form 121 was purported to be effected on Defendant by email at the email address that Defendant had provided to Amazon in its Counter Notice.  Dkt. No. 10 at 1.  On July 8, 2022, a copy of the signed summons was sent to Defendant by email.  *Id.*  On

3

November 21, 2022, Plaintiff filed his first motion for alternative service and a supporting memorandum. Dkt. Nos. 14–15. The Court denied that motion on January 31, 2023, finding that, in this context, email service did not satisfy any one of the three methods that Rule 4(f) provides for serving process on individuals in foreign countries.[1] Dkt. No. 16.

In its Memorandum and Order denying Plaintiff's motion, the Court first held that, where a country has objected to service by postal mail under the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters (the "Hague Convention" or "Convention"), to which both China and the United States are signatories, service by email on Chinese defendants is prohibited. *Id.* at 6 (citing, *inter alia*, *Water Splash, Inc. v. Menon*, 581 U.S. 271, 273 (2017) ("[T]he . . . Convention specifies certain approved methods of service and pre-empts inconsistent methods of service where it applies." (internal quotation marks omitted))). The Court then rejected Plaintiff's contention that service by email was permitted because Defendant waived service of process under the Hague Convention through its Counter Notice filed with Amazon pursuant to the DMCA. *Id.* at 8. Although the Court agreed that nothing in the Hague Convention prevented a party from agreeing to accept service by email by contract, it found that Defendant here did not waive the procedures of the Hague Convention and agree to accept service by email. *Id.* at 8–9. It reasoned that the Counter Notice—which simply

---

[1] Rule 4(f) states that service of process may be effected on an individual in a foreign country (1) "by any internationally agreed means of service," such as by treaty; (2) "if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice"; or (3) "by other means not prohibited by international agreement, as the court orders." Fed. R. Civ. P. 4(f). The Court has concluded that Rule 4(h) extends the relevant portions of 4(f) beyond individuals to corporations and other entities in foreign countries. *See, e.g.*, *Convergen Energy LLC v. Brooks*, 2020 WL 4038353, at *8 (S.D.N.Y. July 17, 2020); *Mattel, Inc. v. Animefun Store*, 2020 WL 2097624, at *5 (S.D.N.Y. May 1, 2020) ("[Rule 4(h)] confirms that service of process on foreign corporations may be made using the same methods outlined in 4(f)(1) and 4(f)(3), among other provisions."). Plaintiff contends again in his renewed motion that service is proper under Rule 4(f)(3). *See* Dkt. No. 24. Service under Rule 4(f)(3) is proper as long as it "(1) is not prohibited by international agreement; and (2) comports with constitutional notions of due process." *Stream SICAV v. Wang*, 989 F. Supp. 2d 264, 278 (S.D.N.Y. 2013) (internal quotation marks omitted).

4

stated that Defendant "agree[d] to accept service of process from" its accuser—"indicates *who* would accept service with respect to the claim; it does not specify *the method* by which such service would be effected and *does not contain an agreement* to accept service by email." *Id.* at 9 (emphasis added). The Court concluded: "Without an explicit agreement to accept service by email, the Court will not construe the Counter Notice as abrogating Defendant's rights under Federal Rule of Civil Procedure 4(f)." *Id.* at 9–10; *see also Kadmon Corp. LLC v. Ltd. Liab. Co. Oncon*, 2023 WL 2346340, at *4 (S.D.N.Y. Mar. 3, 2023) ("Because of [a foreign country's] objection to Article 10 [of the Hague Convention, which provides for service via mail], Rule 4(f)(3) does not permit service within [the foreign country] by email."). Accordingly, the Court denied Plaintiff's motion without prejudice to renewal should Plaintiff demonstrate that the Hague Convention does not apply to Defendant. Dkt. No. 16 at 10.

On February 16, 2023, Plaintiff requested a stay of this action pending the Second Circuit's disposition of the appeal in *Smart Study Co. v. Acuteye-Us*, 620 F. Supp. 3d 1382 (S.D.N.Y. 2022), on which the Court relied in holding that service by email on Chinese residents is prohibited without the defendant's consent. Dkt. No. 19. The Court granted that motion and stayed the case. Dkt. No. 20. On May 3, 2023, the Second Circuit dismissed the appeal for want of jurisdiction. *See Smart Study Co. v. HAPPY PARTY-001*, 2023 WL 3220461, at *2–4 (2d Cir. May 3, 2023) (summary order). The Court lifted the stay on May 16, 2023, Dkt. No. 22, and Plaintiff renewed his motion for alternative service on June 1, 2023 and filed a supporting memorandum of law, Dkt. Nos. 23–24. Defendant has taken no action before the Court since this action commenced.

**DISCUSSION**

Plaintiff's memorandum of law in support of his renewed motion for alternative service is substantively identical to his memorandum of law in support of his original motion in all but one

5

respect: Defendant attempts to distinguish *Smart Study* by arguing that the counter-notification submitted by Defendant to Amazon, in which the Defendant agreed to "accept service of process" pursuant to the DMCA, "waived any requirement for Plaintiff to Serve Defendant through means set forth in the Hague Convention." Dkt. No. 24 at 13; *see also id.* at 10–11. Plaintiff argues that "it would be meaningless for Defendant to 'consent to service' and consent to this Court's jurisdiction [through the DMCA Counter Notice], and then require that Plaintiff personally serve Defendant to acquire personal jurisdiction over the Defendant. Indeed, such a requirement would potentially gut the protections the DMCA provides to rights holders against foreign infringers." *Id.* at 13–14. Putting aside that the Court already rejected this argument in its original Memorandum and Order, Dkt. No. 16 at 8–10, the Court again finds that the DMCA does not waive the requirements of the Hague Convention.

The key issue that the Court addresses today is the meaning of the phrase "accept service of process" as used in Subsection 512(g)(3)(D) of the DMCA, and whether this provision renders the Hague Convention protocols for effecting service of process on foreign entities inapplicable. The DMCA requires that a counter notification filed by a subscriber contain, *inter alia*, "a statement that the subscriber consents to the jurisdiction of . . . any judicial district in which the service provider may be found, and that the subscriber *will accept service of process* from the person who provided notification . . . or an agent of such person." 17 U.S.C. § 512(g)(3)(D) (emphasis added). Plaintiff argues, based on this language and Defendant's Counter Notice, that, "Defendant very clearly waived service of process procedures under the Hague Convention." Dkt. No. 24 at 12.

Plaintiff's argument presents a challenge for statutory interpretation. Other statutes and rules not infrequently use the phrase "accept service of process," but do so to require a principal

subject to suit to designate an agent as authorized to "accept service of process." *See, e.g.*, 33 U.S.C. § 4213(a)(3) (requiring the maintenance of "a designated agent authorized to accept service of process"); 42 U.S.C. § 10702(d) (requiring the State Justice Institute to maintain "a designated agent to accept service of process"); 43 U.S.C. § 1748c(d)(2)(A) (same with respect to the Bureau of Land Management Foundation); 20 U.S.C. § 2996b(b) (same with respect to the Legal Services Corporation); 16 U.S.C. § 3703(a)(4) (same with respect to the National Fish and Wildlife Foundation); 20 U.S.C. § 5509 (same with respect to the National Environmental Education and Training Foundation). In fact, the DMCA itself requires service providers like Amazon to "designate[] an agent to receive notifications of claimed infringement." 17 U.S.C. § 512(c)(2). In those circumstances, the agent substitutes for the principal. In the absence of some specific permission otherwise, whatever means would be sufficient to hale the principal into court if service was made on the principal are sufficient when service is made on the agent. Fed. R. Civ. P. 4(e)(2)(C); *see Tuebor Reit Sub LLC v. Paul*, 2020 WL 4897137, at *4 (S.D.N.Y. Aug. 19, 2020). Subsection 512(g)(3)(D) of the DMCA appears to be distinctive in that it does not appear to require the principal (the subscriber) to designate an agent to accept service of process. Rather, it requires the principal to agree to accept service of process. Plaintiff argues that such language must mean something. *See, e.g., Chickasaw Nation v. United States*, 534 U.S. 84, 93 (2001). One does not ordinarily speak of the principal being free to reject process that is properly served. In Plaintiff's view then, Congress's language must mean both that the person who filed the counter-notification will receive service of process of a complaint naming him as a defendant in a subsequent lawsuit arising from the posting and, critically, that any notice to such person of the existence of the lawsuit will be sufficient to hale him into court regardless whether that notice satisfies the ordinary requirements of service of process.

The Court does not agree. The Court starts with the language of the statute. *See United States v. Brooker*, 976 F.3d 228, 234 (2d Cir. 2020) (explaining that most cases of statutory interpretation begin with the text). The Court reads Subsection 512(g)(3)(D) in "its context and in light of the terms surrounding it," "exhausting all the textual and structural clues bearing on its meaning." *United States v. Bedi*, 15 F.4th 222, 226 (2d Cir. 2021) (internal citations and quotation marks omitted). It also reads the words of the statute against the backdrop proposition that statutory terms are to be interpreted consistent with their ordinary meaning at the time Congress enacted the statute. *See, e.g.*, *New Prime Inc. v. Oliveira*, 586 U.S. ----, 139 S. Ct. 532, 539 (2019).

The subscriber, in its counter-notification, must state that it "will accept service of process." 17 U.S.C. § 512(g)(3)(D). Service of process is a term of art. *See George v. McDonough*, 596 U.S. ----, 142 S. Ct. 1953, 1959 (2022) ("[W]here Congress employs a term of art obviously transplanted from another legal source, it brings the old soil with it." (internal quotation marks omitted)); *see also Goldstein v. Walmart, Inc.*, 637 F. Supp. 3d 95, 113 n.7 (S.D.N.Y. 2022). Service of process "refers to a formal delivery of documents that is legally sufficient to charge the defendant with notice of a pending action." *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 700 (1988). It does not refer to any delivery of documents that name a person as a defendant. *See Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987) (holding that service of process is "more than notice to the defendant and a constitutionally sufficient relationship between the defendant and the forum"); *see also Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 202 (2d Cir. 2001) (requiring "formal service of process, regardless of whether the statutory phrase . . . hints at some other proper means of receipt of the initial pleading"). The words "waive" and "accept" also have defined

8

meanings. *See, e.g.*, *Coffman v. Glickman*, 328 F.3d 619, 624 n.10 (10th Cir. 2003); *Clement v. Comm'r of Soc. Sec.*, 2011 WL 7138736, at *12 (E.D. Mich. July 7, 2011) *rejected on other grounds by* 2012 WL 313750 (E.D. Mich. Feb. 1, 2012).  Waiver is a legal term of art.  When one speaks of the knowing relinquishment of the right to have a complaint and summons formally served, one ordinarily uses the words "waiver."  *See* Fed. R. Civ. P. 4(d) ("Waiving Service").  Rule 4(d) of the Federal Rules of Civil Procedure, for example, provides that a plaintiff may "request that the defendant waive service of a summons."  *Id*.  Such request, to have legal effect, must be addressed to the individual defendant or to an agent authorized to receive service of process, must "be sent by first-class mail or other reliable means," and, if sent abroad, must give the defendant at least sixty days to return the waiver.  *Id.*; *see United States v. Glaister*, 2021 WL 1565678, at *1–2 (S.D.N.Y. Apr. 21, 2021).  The word "accept," by contrast, ordinarily refers to "taking what is offered, whether as a pleasure, a satisfaction of claim, or a duty," Oxford English Dictionary 70 (2d ed. 1989) (defining "acceptance"), or "[t]o take or receive (a thing offered) willingly," *id.* (defining "accept").  The language does not define the "thing" that is taken or received—here, service of process—it begs the question of what the "thing" is.

The language that Congress used thus refutes Plaintiff's argument that, by agreeing to "accept service of process," Defendant gave up its right to be served with process.  *See Wrinkled Surface Enters. LLC v. Gurianov*, 2021 WL 142280, at *2 (S.D.N.Y. Jan. 15, 2021) ("If Congress had intended for parties filing DMCA counternotices to waive service under Rule 4, surely § 512(g)(3)(D) would use the verb 'waive' from Rule 4—rather than the verb 'accept.'").  The "thing" that Defendant agreed to "accept" was "service of process," which, as noted above, refers to the formal delivery of documents.  Congress provided no definition of the "service of

9

process" that the subscriber was required to accept, or provide any indication that it referred to anything other than the generally applicable understanding of "service of process."  *See, e.g.*, *Tanvir v. Tanzin*, 894 F.3d 449, 463 (2d Cir. 2018) ("Congress is presumed to legislate with familiarity of the legal backdrop for its legislation." (internal quotation marks omitted)).  Thus, Congress cannot be deemed to have intended the subscriber to have waived service of process and to be subject to suit in the United States without any formal notification of the suit to which it was subject.

      The Court's interpretation is reinforced by review of the statute as a whole and the place of the challenged language in that statute.  *Dada v. Mukasey*, 554 U.S. 1, 16 (2008) ("In reading a statute we must not look merely to a particular clause, but consider in connection with it the whole statute." (internal quotation marks omitted)).  The statutory language indicates that the service provision of Subsection 512(g)(3)(D) has an important, but limited, function.  It provides the means by which a subscriber who is accused of having infringed on another's copyright and who, as a result, has lost what might be an extremely valuable posting, can challenge that accusation and to demand that its posting be restored.  Section 512 is concerned primarily with the responsibilities of service providers to both copyright owners and subscribers who post content to the service provider's website.  *See, e.g.*, *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1158 (9th Cir. 2007) ("Congress enacted [Section 512] of the DMCA to provide greater certainty to service providers concerning their legal exposure for infringements that may occur in the course of their activities." (internal quotation marks omitted)).  It is addressed to the contours of liability that service providers—not copyright infringers—face if they fail to discharge their responsibilities.  *See, e.g.*, *Viacom Int'l, Inc. v. Youtube, Inc.*, 676 F.3d 19, 27 (2d Cir. 2012) ("Title II of the DMCA, [including Section 512], was designed to 'clarif[y] the

liability faced by service providers who transmit potentially infringing material over their networks.'" (quoting S. Rep. No. 105–190 at 2 (1998))).

Section 512(c) of the DMCA provides rights to a person who believes that her copyright has been infringed. She can inform the service provider of the alleged infringement. 17 U.S.C. § 512(c)(3). If, upon receipt of an allegation of infringement, the service provider "responds expeditiously to remove, or disable access to, the material that is claimed to be infringing or to be the subject of infringing activity," the service provider does not face liability, at least at that point. *Id.* § 512(c)(1)(C); *see also Viacom Int'l*, 676 F.3d at 37.

The DMCA also necessarily provides rights to the subscriber who is accused of infringement. Were it otherwise, a wily retailer would have the means to disable her competitor's sales by the mere expedient of serving a notification—whether or not that notification had merit. Under Section 512(g), the subscriber who is accused of infringement may have his posting restored by informing the service provider through a "counter-notification" that the removal of online material was improper. 17 U.S.C. § 512(g)(3); *see Capitol Records, LLC v. Vimeo, LLC*, 826 F.3d 78, 83 n.2 (2d Cir. 2016). As long as the subscriber gives the service provider a valid counter-notification conforming with statutory requirements and states, under penalty of perjury, that the material was removed as a result of mistake or misidentification, the service provider must replace that material within the statutory time frame. 17 U.S.C. § 512(g)(2).

The DMCA, however, also provides a further right to the accuser and further guidance to the service provider confronted with competing claims to the rights to the products that are the subject of the posting. The requirement that the removed material be replaced and that access be restored is subject to the qualification that, if the service provider receives notice from the

11

accuser who originally requested that allegedly material be taken down "that [the accuser] has filed an action seeking a court order to restrain the subscriber from engaging in infringing activity relating to the material on the service provider's system or network," the service provider need not replace the removed material. *Id.* § 512(g)(2)(C).

The language of Subsection 512(g)(2)(C) illuminates the function and purpose of the counter-notification provision in Subsection 512(g)(3), including the requirement that the subscriber agree to "accept service of process." The provision begins with the requirement that the subscriber provide its "name, address, and telephone number," it continues with the requirement that the subscriber consent to the jurisdiction of a federal district court, and it ends with the requirement that the subscriber agree to "accept service of process" from the person who requested takedown of the subscriber's content. *Id.* § 512(g)(3)(D). The language must be read as a whole, based on the statutory purpose and with each member of the list of requirements informing the meaning of the others. *See, e.g.*, *Freeman v. Quicken Loans, Inc.*, 566 U.S. 624, 634–35 (2012) ("[A] word is given more precise content by the neighboring words with which it is associated." (internal quotation marks omitted)). So read, the language is best understood to reflect the subscriber's acceptance that, if it posts material on a service provider's website and demands that such material be restored, it will allow its accuser to seek a court order from a United States court adjudicating the competing rights under United States copyright law between it and the person who accuses it of infringement. The first set of information relates to the person who is to be named in an action seeking such an order (the subscriber's name and other identifying information); the second set of information prevents the subscriber from arguing that a United States court cannot enter an order adjudicating the respective rights, and the last set of information—that at issue here—reflects that if the accuser follows the statutory means for

12

serving process the subscriber will not be heard in court to say either that it is the wrong person to be sued with respect to the material at issue or that the accuser or its agent cannot accept service. If a service provider properly serves the subscriber identified in the counternotification with a lawsuit seeking an injunction against the infringing activity, the subscriber will accept that process.

To read the statute otherwise would go far beyond what Congress sought to achieve in Section 512. *See, e.g.*, *Barber v. Thomas*, 560 U.S. 474, 492 (2010) (selecting the statutory construction "most consistent with [the statute's] purpose"). Congress did not intend to effect an all-purpose waiver of service of process with respect to anyone who requests its material, which was improperly removed, be restored to an internet platform. It did not seek to put the subscriber to the choice either of capitulating to what may be a false claim of copyright infringement and thereby depriving itself of what likely is a valuable marketing outlet, or of relinquishing the rights possessed by all would-be defendants to insist on proper service before it is forced to defend against what may be a damages claim in court. Congress's objective was more limited. Congress sought to protect service providers from liability for the posting of allegedly infringing material and to provide a means by which—in the event of competing claims with respect to material that is posted—the service provider would know whether to remove or replace allegedly infringing material. That purpose, and the respective rights of the subscriber and the accuser, are fully satisfied without a requirement that the accuser be relieved of following the ordinary rules with respect to service of process. The statute provides that the service provider need *not* replace the allegedly infringing material—that the accuser can keep it off of the internet—if it has "filed an action seeking a court order to refrain the subscriber from engaging in" the infringing activity. 17 U.S.C. § 512(g)(2)(C). There is no requirement that the accuser actually

serve process. The accuser can receive—and thereby certainly can seek—a court order restraining the subscriber from infringing activity with mere "written or oral notice" and without having to make service of process. *See* Fed. R. Civ. P. 65(b); *Zapata v. City of New York*, 502 F.3d 192, 196–97 (2d Cir. 2007); *see also James v. State Univ. of New York*, 2023 WL 580534, at *7–8 (S.D.N.Y. Jan. 27, 2023).[2] At that point, it would be incumbent upon the subscriber—if she wishes to have the material restored—to appear in the United States court to whose jurisdiction she has subjected herself.

Accordingly, the Court follows the other courts that have declined to read the provisions of the DMCA as a waiver of the service of process procedures of the Hague Convention. *See Cook v. Maximus Int'l Specialists*, 2023 WL 2603756, at *4 (S.D. Fla. Mar. 23, 2023) ("[T]he Court has only found 13 cases that have cited to 17 U.S.C. § 512(g)(3)(D). Not one of the 13 cases stands for the proposition that the filing of a counter-notices [sic], without more, permits service via email on a foreign corporation."); *see also Safavieh Int'l, LLC v. Chengdu Junsen Fengrui Tech. Co., Ltd.-Tao Shen*, 2023 WL 3977505, at *2 (S.D.N.Y. June 13, 2023) ("[I]n the Counter-Notice, [the defendant] did not agree to accept service via email. It has only consented to 'accept service of process from the person who provided notification under subsection (c)(1)(C) or an agent of such person.' This is consent to accept service effected by a particular person . . . , not consent to accept service in a particular manner (via email)."); *Wrinkled Surface Enters.*, 2021 WL 142280, at *2 (same).[3]

---

[2] A temporary restraining order can be extended beyond the 14-day limit for good cause, and while service is being effected. *See, e.g.*, *George v. Prof'l Disposables Int'l, Inc.*, 221 F. Supp. 3d 428, 432–34 (S.D.N.Y. 2016); *Zuru Inc. v. Individuals, P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, 2023 WL 2876819, at *1 (S.D.N.Y. Apr. 10, 2023).

[3] Plaintiff cites *Montaño v. Herrera*, 2023 WL 2644340 (S.D.N.Y. Mar. 27, 2023), where Judge Broderick found the Hague Convention did not preclude alternative service of process in Venezuela, as an alternative ground for finding that the Hague Convention does not apply in this case. *See* Dkt. No. 24, at 12. However, *Montaño* is readily distinguishable. There, "[P]laintiff made a reasonable effort to serve

Plaintiff has filed a lawsuit seeking a court order enjoining Defendant from the allegedly infringing conduct. *See* Dkt. No. 1. It thereby appears to have taken the actions necessary to remove the service provider from the safe harbor that otherwise would have it restore the allegedly infringing material to its website. Those actions, however, are not sufficient to bring Defendant before this Court to answer for the claim for injunctive and financial relief.

**CONCLUSION**

Plaintiff's motion for alternative service is again DENIED.[4]

SO ORDERED.

Dated: October 18, 2023
       New York, New York

LEWIS J. LIMAN
United States District Judge

---

the defendant through Venezuela's Central Authority as provided by the Hague Convention," but the Central Authority "simply refused to accept the package." 2023 WL 2644340, at *2. The court thus permitted alternative service because "compliance with the Hague Convention's approved means of service would be futile." *Id.* Plaintiff here has made no showing that he has attempted to serve Defendant through the Chinese Central Authority or that service of process through that authority would be futile, as opposed to merely a lengthier process than service of process by email.

[4] Plaintiff argues that service of process by email should be allowed pursuant to the Counter Notice because "it is not uncommon for defendants selling infringing products on the Amazon portal to provide fictitious information in a counter notice to attempt to continue selling the infringing products and evade liability." Dkt. No. 24 at 13. Whether or not false information was provided, without more, has no bearing on the applicability of a foreign treaty to which the United States is a signatory. And should Defendant's address as provided in the Counter Notice prove to be fictitious, and should its actual address not be ascertainable through reasonable diligence, then the Hague Convention might not apply. *See Smart Study*, 620 F. Supp. 3d at 1390 ("The Hague Convention does not apply 'where the address of the person to be served with the document is not known.'" (quoting *Advanced Access Content Sys. Licensing Adm'r, LLC v. Shen*, 2018 WL 4757939, at *4 (S.D.N.Y. Sept. 30, 2018))); Convention Done at the Hague art. 1, November 15 1965, 20 U.S.T. 361, T.I.A.S. No. 6638; *see also Shen*, 2018 WL 4757939, at *4 (collecting cases) ("Courts in this Circuit have found an address is not known if the plaintiff exercised reasonable diligence in attempting to discover a physical address for service of process and was unsuccessful in doing so." (internal quotation marks omitted)); *Kelly Toys Holdings, LLC. v. Top Dep't Store*, 2022 WL 3701216, at *6 (S.D.N.Y. Aug. 26, 2022) (same).

15