UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 03/18/2024
```

-------------------------------------------------------------------X
SCOTT CAWTHON,

                    Plaintiff,

      -v-

ZHOUSUNYIJIE,

                  Defendant.

-------------------------------------------------------------------X

      22-cv-03021 (LJL)

      OPINION AND ORDER

**LEWIS J. LIMAN, United States District Judge:**

Plaintiff Scott Cawthon ("Plaintiff") moves, pursuant to Federal Rule of Civil Procedure 55(b)(2), for default judgment on his copyright infringement claim against defendant Zhousunyijie ("Defendant"). Dkt. No. 40. For the following reasons, the motion for default judgment is granted.

## BACKGROUND

These facts are drawn from Plaintiff's complaint and are accepted as true for the purposes of this motion.

Plaintiff is a resident of Texas and creator and intellectual property owner of the Five Nights at Freddy's ("FNAF") series of horror video games and other media (the "Franchise"). Dkt. No. 1 ¶ 10. The Franchise includes twelve games: *Five Nights at Freddy's*, *Five Nights at Freddy's 2*, *Five Nights at Freddy's 3*, *Five Nights at Freddy's 4*, *FNaF World*, *Five Nights at Freddy's: Sister Location*, *Freddy Fazbear's Pizzeria Simulator*, *Ultimate Custom Night*, *Five Nights at Freddy's VR: Help Wanted*, *Five Nights at Freddy's AR: Special Delivery*, *Freddy in Space 2*, and *Five Nights at Freddy's: Security Breach*. *Id.* ¶ 12. The FNAF games are available for purchase on a variety of traditional and virtual reality video game platforms, and have

enjoyed commercial success and critical acclaim—millions of copies of the Five Nights Games have been sold worldwide. *Id.* ¶ 14. As creator and owner of the Franchise, Plaintiff owns over 200 registered copyrights to unique characters and features of the Franchise. *Id.* ¶ 15. These include copyrights to characters Foxy the Pirate (Withered Version), Foxy the Pirate (Funtime Version), Chica the Chicken (Withered Version), Freddy Fazbear (Nightmare Version), Bonnie the Rabbit (Nightmare Version), and Marionette (collectively, the "Copyrights"). *Id.* ¶ 16; Dkt. Nos. 1-2, 1-3, 1-4, 1-5, 1-6, 1-7. Plaintiff also licenses FNAF characters for use in merchandise through his licensing entity Scottgames, LLC, and the licensing portfolio has sold millions of dollars' worth of merchandise in retail stores. Dkt. No. 1 ¶¶ 17–18.

Defendant is a China-based Amazon seller that has been selling unauthorized toy figurines that copy, embody, or constitute derivative works of the Copyrights ("Infringing Product"). *Id.* ¶¶ 23–27; Dkt. No. 1-8. Defendant lists its address as 007894hao gongyeyuanchuangyedadaozhongduanzonghelouyilou wanzaixian yichunshi China. Dkt. No. 1 ¶ 3. Defendant is not an authorized licensee of Plaintiff, nor has it requested permission from Plaintiff to use Plaintiff's copyrighted characters for commercial purposes. *Id.* ¶¶ 28–30.

Once Plaintiff became aware of the existence of the Infringing Product, he submitted a complaint to Amazon on or about March 10, 2022, pursuant to the Digital Millennium Copyright Act ("DMCA"), requesting that Amazon take down the listing. *Id.* ¶ 32. That same day, Amazon removed the Infringing Product from the Amazon website. *Id.* ¶ 33. On or about March 29, 2022, Defendant submitted a counter-notification to Amazon under 17 U.S.C. § 512(g)(3) ("Counter Notice"). In the Counter Notice, Defendant certified to the following:

- Its name (Zhousunyijie)

- Its email address (effergergrg@163.com)

2

- Its mailing address (007894hao gongyeyuanchuangyedadaozhongduanzonghelouyilou wanzaixian yichunshi China)

- Its phone number (+8613905526844)

- Its consent to the jurisdiction of any judicial district in which Amazon is found.

- Its agreement to accept service of process from Plaintiff or his agent.

- Its statements contained in the Counter Notice were true and correct under penalty of perjury and any false statements in the Counter Notice could lead to civil penalties or criminal prosecution.

Dkt. No. 1-1.

The Counter Notice stated:

You recently provided me with a copy of a Notice of Infringement under the Digital Millennium Copyright Act (DMCA). This letter is a Counter-Notification as authorized in § 512(g) of the DMCA. I have a good faith belief that the material identified in the Notice of Infringement was removed or disabled as a result of mistake or misidentification of the material to be removed or disabled. I therefore request that the material be replaced and/or no longer disabled. . . .

(I) I am located in the United States and I consent to the jurisdiction of the Federal District Court for the judicial district in which my address is located (OR) I am located outside of the United States and I consent to the jurisdiction of any judicial district in which Amazon may be found. (II) I agree to accept service of process from the person who provided notification under subsection (c)(1)(C) or an agent of such person. (III) I have a good faith belief that the material identified in the Notice of Infringement was removed or disabled as a result of mistake or misidentification of the material to be removed or disabled. (IV) I declare under penalty of perjury under the laws of the United States of America that this Counter-Notification and all statements therein are true and correct. (V) I ACKNOWLEDGE THAT PROVIDING FALSE STATEMENT IN A COUNTER-NOTICE MAY LEAD TO CIVIL PENALTIES OR CRIMINAL PROSECUTION.

*Id.*

Upon receipt of the Counter Notice, Amazon notified Plaintiff that he had ten business days to file a complaint alleging copyright infringement or the Infringing Product would be re-listed on the Amazon website. *Id.*

## PROCEDURAL HISTORY

Plaintiff initiated this action by complaint on April 12, 2022.  Dkt. No. 1.  On April 13, 2022, an electronic summons was issued as to Defendant.  Dkt. No. 5.

On November 21, 2022, Plaintiff filed a motion requesting leave of the Court to effect service on Defendant by email, rather than postal mail, under Federal Rule of Civil Procedure 4(f) and submitted a brief in support of that motion.  Dkt. No. 14.[1]  On January 31, 2023, the Court denied without prejudice Plaintiff's motion for alternative service on the basis that the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters ("Hague Convention") governs the process for service on foreign defendants and does not permit the use of email for service unless no mailing address for the receiving party can be found.  Dkt. No. 16.[2]  On June 1, 2023, Plaintiff filed a second motion for alternative service, this time arguing that Defendant had waived service under the Hague

---

[1] An initial pretrial conference was set for the morning of July 12, 2022.  Dkt. No. 7.  On July 8, 2022 Plaintiff submitted a motion to adjourn the initial pretrial conference until such time as Defendant answered the complaint or otherwise appeared in this matter.  Dkt. No. 8.  On July 15, 2022, this Court granted the motion to adjourn.  Dkt. No. 9.  On July 15, 2022, Plaintiff submitted a certificate of service of the summons and complaint on Defendant.  Dkt. No. 10.  On August 19, 2022, this Court held an initial pretrial conference where no counsel for the defense was present.  August 19, 2022 Minute Entry.  The Court then ordered Plaintiff to make a motion for default judgment by November 21, 2022.  Dkt. No. 12.  On November 22, 2022, the Court granted Plaintiff's request to extend the deadline for the filing of a default judgment motion, pending a decision on Plaintiff's motion for alternative service.  November 22, 2022 Order.
[2] On February 16, 2023, Plaintiff filed a motion to stay the case pending the appeal to the Second Circuit of the decision in *Smart Study Co., Ltd. v. Acuteye-Us*, 2022 WL 2872297 (S.D.N.Y. July 21, 2022), which this Court relied on in part to support its denial of Plaintiff's motion for alternative service.  Dkt. No. 20.  On May 15, 2023, Plaintiff filed a status report regarding *Smart Study Co., Ltd. v. Acuteye-Us* requesting that the stay be lifted, and on May 16, 2023 the motion was granted.  Dkt. Nos. 21–22.

4

Convention by virtue of its signing of the Counter Notice. Dkt. Nos. 23–24. The Court denied the motion on October 18, 2023, holding that the Counter Notice does not constitute a waiver. Dkt. No. 26. Plaintiff submitted a third motion for alternative service under Federal Rule of Civil Procedure 4(f) on November 2, 2023. Dkt. No. 27. The Court granted the motion for alternative service on the basis that Plaintiff, using reasonable diligence, had tried and failed to locate Defendant's correct postal address, and so the Hague Convention did not apply. Dkt. No. 28. On November 28, 2023, the Clerk of Court issued a certificate of default. Dkt. No. 38.

On December 5, 2023, Defendant filed this motion for a default judgment, Dkt. No. 40, and a proof of service that the motion was served by email on Defendant, Dkt. No. 41. Defendant has not responded to the motion.

## LEGAL STANDARD

Federal Rule of Civil Procedure 55 sets forth a two-step procedure to be followed for the entry of judgment against a party who fails to defend: the entry of a default and the entry of a default judgment. *See New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005).

The first step, entry of a default, simply "formalizes a judicial recognition that a defendant has, through its failure to defend the action, admitted liability to the plaintiff." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011); *see* Fed. R. Civ. P. 55(a). The second step, entry of a default judgment, "converts the defendant's admission of liability into a final judgment that terminates the litigation and awards the plaintiff any relief to which the court decides it is entitled, to the extent permitted" by the pleadings. *Mickalis Pawn Shop*, 645 F.3d at 128; *see also* Fed. R. Civ. P. 55(b). Whether entry of default judgment at the second step is appropriate depends upon whether the allegations against the defaulting party are well pleaded and state a claim for relief. *See Mickalis Pawn Shop*, 645 F.3d at 137.

Because a party in default does not admit conclusions of law, "a district court need not

agree that the alleged facts constitute a valid cause of action." *Id.* (citation omitted); *see Spin Master Ltd. v. 158*, 463 F. Supp. 3d 348, 367 (S.D.N.Y. 2020) ("The essence of Fed. R. Civ. P. 55 is that a plaintiff can obtain from a default judgment relief equivalent to but not greater than that it would obtain in a contested proceeding assuming it prevailed on all of its factual allegations."). Therefore, the Court is "required to determine whether the plaintiff's allegations are sufficient to establish the defendant's liability as a matter of law." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). A party later challenging the entry of a default judgment must satisfy the "good cause shown" standard in Federal Rule of Civil Procedure 55(c), which "requires a court to weigh (1) the willfulness of default, (2) the existence of any meritorious defenses, and (3) prejudice to the non-defaulting party." *Guggenheim Cap., LLC v. Birnbaum*, 722 F.3d 444, 454–55 (2d Cir. 2013).

"The legal sufficiency of these claims is analyzed under the familiar plausibility standard enunciated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), aided by the additional step of drawing inferences in the non-defaulting party's favor." *WowWee Grp. Ltd. v. Meirly*, 2019 WL 1375470, at *5 (S.D.N.Y. Mar. 27, 2019). A default judgment entered on well-pleaded allegations does not reach the issue of damages, and Plaintiff "must therefore substantiate [her] claim for damages with evidence to prove the extent of those damages." *Hood v. Ascent Med. Corp.*, 2016 WL 1366920, at *15 (S.D.N.Y. Mar. 3, 2016), *report and recommendation adopted*, 2016 WL 3453656 (S.D.N.Y. June 20, 2016), *aff'd*, 691 F. App'x 8 (2d Cir. 2017).

To determine the amount of damages that should be awarded on a default judgment, Federal Rule of Civil Procedure 55(b)(2) "leaves the decision of whether a hearing is necessary to the discretion of the district court." *Lenard v. Design Studio*, 889 F. Supp. 2d 518,

527 (S.D.N.Y. 2012).  And "[w]here, on a damages inquest, the plaintiff makes a damages submission and the defaulting defendant makes no submission in opposition and does not request a hearing, the court may determine the adequacy of the plaintiff's damages claim based on its submitted proofs." *Id.*

## DISCUSSION

### I.   Jurisdiction

This claim arises under the Copyright Act, 17 U.S.C. § 101 *et seq.*, so the Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.  Additionally, the Court has personal jurisdiction over all parties in this action.  Pursuant to 17 U.S.C. § 512(g)(3)(D), Defendant completed and signed a Counter Notice which states that

> I am located in the United States and I consent to the jurisdiction of the Federal District Court for the judicial district in which my address is located (OR) I am located outside of the United States and I consent to the jurisdiction of any judicial district in which Amazon may be found.

Dkt. No. 1-1.  Defendant is located outside of the United States and provided in the Counter Notice a mailing address of 007894hao gongyeyuanchuangyedadaozhongduanzonghelouyilou wanzaixian yichunshi China.  An Amazon fulfilment center is located within this jurisdiction, with an address at 7 West 34th St, New York, NY 10001.  Defendant has therefore affirmatively consented to the jurisdiction of the Court.

### II.   Service

Before entering an order of default judgment, the Court must first satisfy itself that service was properly effected upon Defendant.  In this case, service was indeed proper.  The Court granted Plaintiff permission to effect alternative service in its Memorandum and Order of November 3, 2023.  Dkt. No. 28.  It explained its reasoning in that Memorandum and Order.

Federal Rule of Civil Procedure 4(f) governs service upon individuals in foreign countries, like

Defendant.  Rule 4(f) reads as follows:

> Serving an Individual in a Foreign Country.  Unless federal law provides otherwise, an individual—other than a minor, an incompetent person, or a person whose waiver has been filed—may be served at a place not within any judicial district of the United States:
>
> > (1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;
> >
> > (2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice:
> >
> > > (A) as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction;
> > >
> > > (B) as the foreign authority directs in response to a letter rogatory or letter of request; or
> > >
> > > (C) unless prohibited by the foreign country's law, by:
> > >
> > > > (i)  delivering a copy of the summons and of the complaint to the individual personally; or
> > > > (ii) using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt; or
> >
> > (3) by other means not prohibited by international agreement, as the court orders.

Fed. R. Civ. P. 4(f).

Defendant is a resident of China.  Dkt. No. 1-1.  Because China and the United States are

both signatories to the Hague Convention, the Hague Convention would normally apply to

service of process on defendants located in China.  *Smart Study*, 2022 WL 2872297, at *4

("[C]ompliance with the [Hague] Convention is mandatory in all cases to which it applies."

(quoting *Advanced Access Content Sys. Licensing Adm'r, LLC v. Shen*, 2018 WL 4757939, at *4

(S.D.N.Y. Sept. 30, 2018))).  However, "[t]he Hague Convention does not apply where the address of the person to be served with the document is not known."  *Smart Study Co., Ltd. v. Acuteye-Us*, 620 F. Supp. 3d 1382, 1391 (S.D.N.Y. 2022) (internal quotation marks omitted).  "Courts in this Circuit have found that an address is 'not known' if the plaintiff exercised reasonable diligence in attempting to discover a physical address for service of process and was unsuccessful in doing so."  *Id.*  Such reasonable diligence to discover a physical mailing address

> include[s] where the plaintiff researched defendant's websites associated with defendant's domain names, completed multiple Internet-based searche[s], called known phone numbers, and conducted in-person visits, where the plaintiff performed extensive investigation and issued subpoenas to the relevant domain registrars and email providers, and where a plaintiff has attempted to obtain the defendant's address in a variety of ways.

*Id.* (internal alterations, citations, and quotation marks omitted).  Plaintiff demonstrated that Defendant's address was not known after exercising reasonable diligence for reasons set forth in the Memorandum and Order.  Dkt. No. 28 at 2–3.  In addition, the Court further held that service by email comports with both the requirements of Federal Rule of Civil Procedure 4(f)(3) and the demands of the Due Process Clause.  *Id.* at 3 ("Amazon requires a merchant to provide a valid and operational email address to register an online storefront . . . Defendant provided Amazon with its email . . .  Thus, Defendant should be able to receive proper service and notice through the email address associated with its Amazon account."); *Convergen Energy LLC v. Brooks*, 2020 WL 4038353, at *6 (S.D.N.Y. July 17, 2020) ("Service by email alone comports with due process where a plaintiff demonstrates that the email is likely to reach the defendant." (internal quotation marks omitted)).  Plaintiff has submitted evidence that service was effected on Defendant by email as permitted by the Court.  Dkt. No. 40-1 ¶¶ 2–3 & Ex. B.

For the above reasons, service on the Defendant was proper under Federal Rule of Civil Procedure 4(f).

III.    **Liability**

Plaintiff seeks default judgment on its copyright infringement claim against Defendant. Dkt. No. 1.  To prevail on a copyright claim, a plaintiff must demonstrate ownership of a valid copyright and unauthorized copying of the copyrighted work.  *See Spin Master*, 463 F. Supp. 3d at 369 (citing *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 51 (2d Cir. 2003)).  Plaintiff pleaded facts regarding and produced evidence of its exclusive copyright ownership of the six FNAF characters at issue.  Dkt. No 1 ¶ 16; Dkt. Nos. 1-2, 1-3, 1-4, 1-5, 1-6, 1-7.  This is sufficient to make out a *prima facie* case of copyright infringement.  *Spin Master*, 463 F. Supp. 3d at 369 n.44 ("A certificate of registration from the United States Register of Copyrights constitutes *prima facie* evidence of the valid ownership of a copyright."); *see* 17 U.S.C. § 410(c).

To satisfy the second element of a copyright claim, unauthorized copying of work, a plaintiff must demonstrate that: "(1) the defendant has actually copied the plaintiff's work; and (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectible elements of plaintiff's [work]."  *Yurman Design, Inc. v. PAJ Inc.*, 262 F.3d 101, 110 (2d Cir. 2001).  A plaintiff may demonstrate actual copying "either by direct or indirect evidence," but because "direct evidence of copying is seldom available, a plaintiff may establish copying circumstantially," *Jorgensen*, 351 F.3d at 51, such as with "proof that the defendants had access to the copyrighted work and similarities that are probative of copying between the works," *Hamil Am. Inc. v. GFI*, 193 F.3d 92, 99 (2d Cir. 1999).  "Access may be established directly or inferred from the fact that a work was widely disseminated or that a party had a reasonable possibility of viewing the prior work."  *Boisson v. Banian, Ltd.*, 273 F.3d 262, 270 (2d Cir. 2001).  There is no question that Plaintiff's artwork has been widely disseminated such that Defendant had a reasonable probability of encountering it at some point.  The Franchise has sold millions of games worldwide, and the FNAF licensing portfolio has itself generated millions

of dollars in sales at retail stores.  Dkt. No. 1 at 5, 7.  These facts are enough to establish that Defendant had access to Plaintiff's copyrighted works.

Moreover, the Infringing Product bears a "substantial similarity" to Plaintiff's artwork. The test for substantial similarity between two items is whether an "ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard their aesthetic appeal as the same." *Hamil Am. Inc. v. GFI*, 193 F.3d 92, 100 (2d Cir. 1999) (quoting *Peter Pan Fabrics, Inc. v. Martin Weiner Corp.*, 274 F.2d 489, 489 (2d Cir. 1960) (L. Hand, J.)).  The Infringing Product is labeled on Amazon as "PVC FNAF *Set of 6* -Five Nights at Freddys [sic] Action Figures Toy Dolls -Cake Toppers, Foxy Articulated Action, Toys Dolls, Chritmas [sic] Gifts, Cake Decoration."  Dkt. 1 ¶ 16 (emphasis added).  The set, analyzed as a whole, contains figurines bearing marked similarities to the Copyrights.  Of the six figurines, five are virtually identical to each of the following of Plaintiff's Copyrights: Foxy the Pirate (Withered Version), Foxy the Pirate (Funtime Version), Chica the Chicken (Withered Version), Freddy Fazbear (Nightmare Version), and Bonnie the Rabbit (Nightmare Version).  Dkt. No. 1 ¶¶ 16, 26.  Each of these five figurines contains variations so minor that they would almost certainly be overlooked by the "ordinary observer"; for instance, the figurine allegedly copying Foxy the Pirate (Funtime Version) has black eyebrows, rather than the copyrighted version's magenta. The sixth figurine, a long-limbed skeletal character with a black-and-white mask reminiscent of a clown's, is similar to the copyrighted Marionette character, but contains some differences. Unlike the copyrighted Marionette, the marionette-like figurine does not possess distinctive white-striped markings at the ends of the legs; features a black-and-white, as opposed to black, white, red, and purple face mask; possesses skeletal features, including a prominent rib cage; has eyeballs; and has a distinctive twisted or unraveling appearance to its limbs.  Dkt. No. 1 ¶¶ 16,

26.  Despite these differences, the figurine also resembles the Marionette in many respects.  Both have black bodies, smiling white masks with vertical stripes below each eye, long and thin limbs, horizontal stripes on the arms, and long fingers.  Dkt. No. 1 ¶¶ 16, 26.  *Compare* Figs. 1–6 *with* Fig. 7.



Fig. 1 "Foxy the Pirate (Withered Version)" (Dkt. No. 1 ¶ 16(B))



Fig. 2 "Foxy the Pirate (Funtime Version)" (Dkt. No. 1 ¶ 16(C))



Fig. 3 "Chica the Chicken (Withered Version)" (Dkt. No. 1 ¶ 16(D))



Fig. 4 "Freddy Fazbear (Nightmare Version)"
(Dkt. No. 1 ¶ 16(E))



Fig. 5 "Bonnie the Rabbit (Nightmare Version)" (Dkt. No. 1 ¶ 16(F))



Fig. 6 "Marionette" (Dkt. No. 1 ¶ 16(G))



Fig. 7 "Infringing Product" (Dkt. No. 1 ¶ 26)

The differences between the copyrighted Marionette and Defendant's product are not fatal to Plaintiff's claim of infringement. Defendant is alleged to have sold the six figurines as a set with the product name "Five Nights at Freddys Action Figures Toy Dolls." *Id.* ¶ 26. The Infringing Product is defined as the set of six and not the figurines individually. *Id.* The substantial similarity test, however, "requires the ordinary observer to focus on the forest, not the trees." W. Patry, Patry on Copyright § 9:137. "[I]t is enough that substantial parts were lifted;

no plagiarist can excuse the wrong by showing how much of his work he did not pirate."

*Sheldon v. Metro-Goldwyn Pictures Corp.*, 81 F.2d 49, 55 (2d Cir. 1936) (L. Hand, J.).  The

Infringing Product easily passes the test of substantial similarity to Plaintiff's copyrights.  Five of

the six figurines are so similar to the Copyrights as to be practically indistinguishable; the sixth,

while not identical, bears a distinct resemblance to the copyrighted Marionette.  Dkt. No. 1 ¶¶ 16,

26.  At the very least, both the copyrighted Marionette and the marionette-like figurine appear to

depict masked puppets.  *Id.*  The marionette-like figurine's significant resemblance to the

Marionette copyright, together with its combination with five other characters substantially

similar to the Copyrights, renders the Infringing Product as a whole substantially similar to the

Plaintiff's copyrights.  Indeed, the "total concept and feel" of Defendant's product indicates that

an infringement has taken place: the marionette-like figurine fits in well with the sinister

undertones of the whole set, consistent with the Franchise's horror-focus.  *See Eden Toys, Inc. v.*

*Marshall Field & Co.*, 675 F.2d 498, 500 (2d Cir. 1982).  Moreover, Defendant was unabashed

in its intention to copy Plaintiff's characters—the Infringing Product was explicitly labeled as a

set of "Five Nights at Freddys" figurines.  Dkt. No. 1 ¶ 26.  "Good eyes and common sense" are

primary tools in assessing a copyright infringement claim, and in this case both lead to the

unequivocal conclusion that Defendant infringed on Plaintiff's copyrights.  *Soptra Fabrics Corp.*

*v. Stafford Knitting Mills, Inc.*, 490 F.2d 1092, 1093 (2d Cir. 1974).

## IV.    Damages

Plaintiff seeks statutory damages totaling $150,000.00 against Defendant for willful

copyright infringement.  Dkt. No. 40-1 ¶¶ 15–16.  The Copyright Act provides three types of

damages for plaintiffs who have been injured by copyright infringement: (1) actual damages,

including the infringer's profits; (2) statutory damages "not less than $750 or more than $30,000

as the court considers just"; or (3) if the court finds that the infringement was willful, "a sum of

not more than $150,000." 17 U.S.C. § 504(b)–(c).  Plaintiffs may elect to recover statutory

damages instead of actual damages.  *Id.* § 504(c)(1).

Plaintiff is eligible for statutory damages because the Copyrights were registered prior to

the date of the alleged infringement.  17 U.S.C. § 412.[3]  The copyrights to Foxy the Pirate

(Withered Version), Freddy Fazbear (Nightmare Version), Bonnie the Rabbit (Nightmare

Version), and Marionette were all registered on July 15, 2015.  Dkt. Nos. 1-2, 1-5, 1-6, 1-7.  The

copyright to Foxy the Pirate (Funtime Version) was registered on May 9, 2016, and the copyright

to Chica the Chicken (Withered Version) was registered on July 16, 2015.  Dkt. Nos. 1-3, 1-4.

Upon discovering the infringement, Plaintiff submitted a complaint to Amazon on March 10,

2022.  Dkt. No. 1 ¶ 32.

Courts in this Circuit look to six factors in determining statutory damages:

(1) the infringer's state of mind; (2) the expenses saved, and profits earned, by the
infringer; (3) the revenue lost by the copyright holder; (4) the deterrent effect on
the infringer and third parties; (5) the infringer's cooperation in providing evidence
concerning the value of the infringing material; and (6) the conduct and attitude of
the parties.

*Bryant v. Media Rights Products, Inc.*, 603 F.3d 135, 144 (2d Cir. 2010).

The first factor looks to the infringer's state of mind, i.e., whether the defendant willfully

violated the plaintiff's copyright.  "In cases of willful infringement, an award should 'discourage

wrongful conduct, as well as . . . provide reparation for injury.'"  *Howarth v. FORM BIB LLC*,

2020 WL 3441030, at *3 (S.D.N.Y. May 11, 2020), *report and recommendation adopted*, 2020

WL 3436685 (S.D.N.Y. June 22, 2020) (quoting *Broad Music, Inc. v. Prana Hosp., Inc.*, 158 F.

---

[3] "[N]o award of statutory damages or of attorney's fees . . . shall be made for . . . any
infringement of copyright commenced after first publication of the work and before the effective
date of registration, unless such registration is made within three months after the first
publication of the work."  17 U.S.C. § 412.

Supp. 3d 184, 197–98 (S.D.N.Y. 2016)).  Infringement is willful when "the defendant was actually aware of the infringing activity, or . . . the defendant's actions were the result of 'reckless disregard' for, or 'willful blindness' to, the copyright holder's rights." *Island Software & Comput. Servs., Inc. v. Microsoft Corp.*, 413 F.3d 257, 263 (2d Cir. 2005).  The defendant's knowledge "need not be proven directly but may be inferred from the defendant's conduct." *N.A.S. Import, Corp. v. Chenson Enters., Inc.*, 968 F.2d 250, 252 (2d Cir. 1992).  Courts will consider various factors when determining willfulness, including "whether the infringer had received warnings of the infringement[] . . . ." *Agence Fr. Presse v. Morel*, 934 F. Supp. 2d 547, 570 (S.D.N.Y. 2013).

Defendant's conduct was willful by virtue of the labeling of the Infringing Product, the substantial similarity between the Infringing Product and Plaintiff's Copyrights, and Defendant's submission of the Counter Notice.  Perhaps most probative is the very name of Infringing Product as listed on Amazon: "PVC FNAF Set of 6 -Five Nights at Freddys Action Figures Toy Dolls -Cake Toppers, Foxy Articulated Action, Toys Dolls, Chritmas Gifts, Cake Decoration." The label explicitly references both the Franchise name and "Foxy," a Franchise character.  Dkt. No. 1 ¶ 26; *Id.* ¶ 16 (showing Plaintiff's ownership of copyrights to "Foxy the Pirate (Withered Version)" and "Foxy the Pirate (Funtime Version)").  The virtual identicality of at least five of the figurines in the set to Plaintiff's copyrights also shows willfulness.  *Spin Master*, 463 F. Supp. 3d at 374 (citing *WowWee Grp.*, 2019 WL 1375470, at *10).  Moreover, Defendant received a warning of the infringement after Plaintiff entered a complaint with Amazon requesting the takedown of the Infringing Product, and confirmed receipt of such warning by submitting the Counter Notice.  Dkt. No. 1 ¶ 34.  In the face of that warning and given the extent of the copying, Defendant could not have believed its conduct was lawful.  This is enough to

establish willfulness on Defendant's part and weighs in favor of a high award of statutory damages. *See Cawthon v. Pan Nuan Nuan*, 2023 WL 2758435, at *2 (S.D.N.Y. Apr. 3, 2023) (finding that the defendant's submission of a Counter Notice and subsequent default constituted evidence of willfulness) (citing *Samsonite IP Holdings S.ar.l. v. Shenzhen Liangyiyou E-Com. Co.*, 2021 WL 9036273, at *9 (S.D.N.Y. Apr. 27, 2021)); *Bus. Casual Holdings, LLC v. TV-Novosti*, 2023 WL 1809707, at *11 (S.D.N.Y. Feb. 8, 2023) (stating that the defendant's refusal to retract DMCA counter-notifications, despite not genuinely believing the material was non-infringing, was evidence of willfulness).

The second and third factors to consider are expenses saved and profits earned by Defendant and the revenue lost by Plaintiff. Statutory damages are particularly appropriate where, as here, it is difficult for the plaintiff to prove its damages with exactitude. *See Castillo v. G & M Realty L.P.*, 950 F.3d 155, 172 (2d. Cir. 2020) ("Unlike actual damages, statutory damages do not require the precise monetary quantification of injury"); *Spin Master*, 463 F. Supp. 3d at 372. However, Plaintiff has submitted no evidence of the cost of the Infringing Product, the number of infringing sets sold, or the extent of profits reaped by Defendant through sale of the product. *See generally* Dkt. Nos. 1, 40-2. Nor has Plaintiff submitted any evidence of his own revenue lost. *Id.* Plaintiff has also submitted no evidence of how it lost any revenue or how Defendant profited from the infringement. *See Farrington v. Jewish Voice Inc.*, 2022 WL 541645, at *5 (E.D.N.Y. Feb. 23, 2022). Because Defendant has defaulted, it is difficult, if not impossible, to ascertain the scope of the losses sustained by Plaintiff. The lack of information renders these factors neutral. *Cf. Spin Master, Inc. v. Amy & Benton Toys & Gifts Co.*, 2019 WL 464583 at *6 (S.D.N.Y. Feb. 6, 2019) (finding that the defendants' default made it impossible to "meaningfully assess" the extent of expenses saved, profits reaped, or revenue lost); *see also*

*WowWee Grp. v. Meirly*, 2019 WL 1375470, at *10 (S.D.N.Y. Mar. 27, 2019) (finding that the factors assessing expenses saved, profits reaped, and revenue lost could not be evaluated); *Bumble & Bumble, LLC v. Pro's Choice Beauty Care, Inc.*, 2016 WL 658310, at *4 (S.D.N.Y. 2016).

The fourth factor looks to the deterrent effect of any damages award on the defendant or other parties. The need for specific deterrence is particularly high where the defendant is "a serial copyright infringer, or . . . continues to infringe copyrights in spite of repeated notices of infringement." *Parsons v. Bong Mines Ent. LLC*, 2021 WL 931506, at *9 (E.D.N.Y. Feb. 18, 2021). Despite receiving notice under the DMCA that Plaintiff had alleged an infringement, Defendant submitted the Counter Notice in response, a clear attempt to continue profiting off of Plaintiff's Copyrights. *See* Dkt. No. 1 ¶ 34. This in turn forced Plaintiff to initiate this lawsuit to protect his rights. *See* 17 U.S.C. § 512(g)(2)(c). Defendant's behavior in this regard supports a substantial damages award. On the other hand, the need for general deterrence is greatest where "the presence of multiple actors indicates . . . a greater scale of infringement." *McGraw Hill LLC*, 2022 WL 2979721, at *5. Plaintiff makes no indication that there are multiple actors involved in the infringement, and so this aggravating factor is not present here.

The fifth factor, defendant's cooperation in providing evidence of the value of the infringing products, does not apply in the case of default judgment. *Hirsch v. Sell It Soc., LLC*, 2020 WL 5898816, at *4 (S.D.N.Y. Oct. 5, 2020). "The Court does not view [Defendant's default] as probative." *Verch v. Blockchain Techs. Corp.*, 2021 WL 1198784, at *2 (S.D.N.Y. Mar. 30, 2021). Absent evidence that Defendant "engaged in an effort to conceal the fact or scale of its wrongdoing or to mislead the plaintiff or the court about the existence or scale of [the infringement]," *Spin Master*, 463 F. Supp. 3d at 374, this factor is neutral.

Finally, the sixth factor considers the conduct and attitude of the parties.  The mere fact that Defendant defaulted does not alone tip this factor in Plaintiff's favor.  *Spin Master*, 463 F. Supp. 3d at 374.  However, as stated above, Defendant's submission of the Counter Notice effectively forced Plaintiff to initiate a lawsuit.  This uncooperative and costly action weighs in favor of a higher award of statutory damages.  However, Plaintiff's failure to submit any evidence to assist the Court in determining the appropriateness of the statutory award sought weighs against a substantial award.  In his memorandum in support of the motion for default judgment, the only evidence Plaintiff submits in support of his requested damages award is that Defendant's infringement was willful.  Plaintiff provided no information on the value of the licensing fee or estimates of revenue lost.  The Court has previously held that "[t]o the extent possible, statutory damages 'should be woven out of the same bolt of cloth as actual damages.'" *Id.* at 371 (quoting *Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 315 F. Supp. 2d 511, 520 (S.D.N.Y. Apr. 23, 2004)).  This cannot be done without evidence of actual damages.  "Indeed, the 'dearth of information that [P]laintiff has provided' has hampered the Court's ability to analyze these factors." *Bass v. Diversity Inc. Media*, 2020 WL 2765093, at *4 (S.D.N.Y. May 2020) (Nathan, J.) (quoting *Seelie v. Original Media Grp. LLC*, 2020 WL 136659, at *5 (E.D.N.Y. Jan 13. 2020)).

Overall, these six factors, particularly that of willfulness, suggest that a substantial award of statutory damages is warranted.  Plaintiff requests $150,000.00 in damages, the statutory maximum for the willful infringement.  17 U.S.C. § 504(c).[4]  However, "[t]he court has broad

---

[4] Plaintiff seeks a single award of statutory damages for infringement of one work.  Dkt. No. 40-1 ¶ 16.  Plaintiff thus does not claim that each figurine constitutes a separate "work" for the infringement of which it is entitled to a separate award up to $150,000.  The Copyright Act provides that the copyright owner can elect to receive an award of statutory damages with respect to each work in an action, but clarifies that "[f]or the purposes of this subsection, all parts

discretion to select the amount of damages award within the pertinent statutory range." *Parsons*,

2021 WL 931506, at *8.  While Plaintiff has not submitted any evidence of his losses, courts in

this circuit will sometimes consider the value of the infringed copyright in setting damages

awards.  *Elsevier Inc. v. Siew Yee Chew*, 2019 WL 74606, at *10 n.7 (S.D.N.Y. Jan. 2, 2019)

(quoting *Polo Ralph Lauren v. 3M Trading Co.*, 1999 WL 33740332, at *6 (Apr. 19, 1999)).

Plaintiff alleges that the Franchise has sold millions of products worldwide and enjoys

substantial commercial success and a high degree of consumer recognition.  Dkt. No. 1 ¶¶ 14, 20.

On a motion for default judgment, the Court accepts these factual allegations as true and draws

all reasonable inferences in the moving party's favor.  *Finkel v. Romanowicz*, 577 F.3d 79, 84

(2d Cir. 2009).  Therefore, the Court finds that the Copyrights are highly valuable.  This,

combined with evidence of Defendant's willfulness and the fact that Defendant was apparently

on notice of the alleged violation as evidenced by its submission of the Counter Notice, supports

a total award greater than the minimum of $30,000 for willful infringements, but less than the

maximum award of $150,000, given the absence of evidence that Plaintiff suffered actual losses.

The Court therefore awards statutory damages in the amount of $90,000.

## V.    Attorneys' Fees

In addition to statutory damages, Plaintiff requests an award of reasonable attorneys' fees

and costs pursuant to 17 U.S.C. §§ 505, 512(f).  Dkt. No. 40-2 at 18.  Plaintiff specifically

requests $26,635.00 in attorneys' fees plus $416.32 in costs, or in the alternative, $26,091.87

---

of a compilation or derivative work constitute one work."  17 U.S.C. § 504(c)(1).  The Second
Circuit has held that, when determining whether a group of copyrights constitutes a single
compilation, the proper "focus[] [is] on whether the plaintiff—the copyright holder—issued its
works separately; or together as a unit."  *Byrant*, 603 F.3d at 141.  Plaintiff has submitted no
evidence that any of the copyrighted characters are issued or sold separately.  *See generally* Dkt.
No. 1.

(accounting for a courtesy discount received by Plaintiff) plus $416.32 in costs.  Dkt. No. 40-1 ¶ 22.

Section 505 provides that "the court in its discretion may allow the recovery of full costs by or against any party," and "the court may also award a reasonable attorney's fee to the prevailing party as part of the costs."  17 U.S.C. § 505.  In determining whether to award attorney's fees under 17 U.S.C. § 505, "district courts may consider such factors as (1) the frivolousness of the non-prevailing party's claims or defenses; (2) the party's motivation; (3) whether the claims or defenses were objectively reasonable; and (4) compensation and deterrence."  *Bryant*, 603 F.3d at 144; *see Simons v. Brigade USA Inc.*, 2022 WL 4115369, at *8 (E.D.N.Y. July 27, 2022).  An award of attorneys' fees and other costs is warranted here where Defendant has defaulted, its infringement was willful, and an award will further the goals of deterrence.  *See Mockingbird 38, LLC v. Int'l Bus. Times, Inc.*, 2022 WL 154137, at *6 (S.D.N.Y. Jan. 18, 2022); *see also Farrington*, 2022 WL 541645, at *6 (finding an award of attorney's fees to be warranted in default judgment case where the defendant engaged in willful misconduct).

The Court will begin with assessing "the lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case."  *Milea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011); *see generally Lilly v. City of New York*, 934 F.3d 222, 227–34 (2d Cir. 2001) (discussing calculation of reasonable hourly rates and reasonable number of hours expended).  The party seeking fees bears the burden of demonstrating that its requested hours and hourly rates are reasonable and must provide a court with sufficient information to assess the fee application.  *See Allende v. Unitech Design, Inc.*, 783 F. Supp. 2d 509, 512–13 (S.D.N.Y. 2011).  A court's focus is "on setting a reasonable hourly rate, taking account of all case-specific

variables." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany & Albany Cty. Bd. of Elections*, 522 F.3d 182, 189 (2d Cir. 2008).  The reasonable hourly rate is "the rate a paying client would be willing to pay," bearing in mind "that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively."  *Id.* at 190.  When an attorney's requested hourly rate is higher than rates found to be reasonable in the relevant market, the court may reduce the requested rate.  *See Savino v. Comput. Credit, Inc.*, 164 F.3d 81, 87 (2d Cir. 1998).  Once a court has determined the appropriate hourly rate, it must also examine whether the number of hours billed was reasonable.  "In making this examination, the district court does not play the role of an uninformed arbiter but may look to its own familiarity with the case and its experience generally as well as to the evidentiary submissions and arguments of the parties." *Gierlinger v. Gleason*, 160 F.3d 858, 876 (2d Cir. 1998) (quoting *DiFilippo v. Morizio*, 759 F.2d 231, 235–36 (2d Cir. 1985)).  "The relevant issue . . . is not whether hindsight vindicates an attorney's time expenditures, but whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures."  *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992).  The court "should exclude excessive, redundant or otherwise unnecessary hours."  *Quarantino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999).

The Supreme Court has emphasized that "determination of fees 'should not result in a second major litigation.'"  *Fox v. Vice*, 563 U.S. 826, 838 (2011) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)).  The Court's role is not to act as a "green-eyeshade" accountant but "to do rough justice."  *Id.*

Plaintiff has submitted billing records with entries for 12 timekeepers.  Plaintiff also has submitted a declaration identifying the billing rates for certain of the professionals who billed time on the matter which range from $625 per hour for a principal who billed 0.4 hours to the

matter, Dkt. No. 40-1 ¶ 23(g), to fees ranging from $335 per hour to $575 per hour for counsel who worked on the matter, *id.*¶ 23(h), (i), (k), to $365 per hour to $450 an hour for an associate who worked on the matter, *id.* ¶ 23(j).  The paralegals were billed at rates ranging from $225 an hour to $275 an hour.  *Id.* ¶ 23(l–n).

Courts in this District and in the Eastern District of New York have approved rates of $350 per hour for associates and $500 per hour for partners.  *See Phillips v. TraxNYC Corp.*, 2023 WL 1987206, at *10 (E.D.N.Y. Feb. 14, 2023), *report and recommendation adopted*, 2023 WL 2532066 (E.D.N.Y. Mar. 14, 2023) (citing cases); *see also Simons v. Brigade USA Inc.*, 2022 WL 4115369, at *8 (E.D.N.Y. July 27, 2022); *Farrington*, 2022 WL 543029, at *6.  Some courts have awarded as much as $735 per hour for partners.  *See Samsonite IP Holdings*, 2021 WL 9036273, at *14.  Courts have awarded fees for paralegals at rates ranging from $100 per hour to $200 per hour.  *See Sadowski v. Yeshiva World News, LLC*, 2023 WL 2707096, at *9 (E.D.N.Y. Mar. 16, 2023), *report and recommendation adopted*, 2023 WL 2742157 (E.D.N.Y. Mar. 31, 2023); *Samsonite IP Holdings*, 2021 WL 9036273, at *14; *G&G Closed Cir. Events, LLC v. Pacheco*, 2021 WL 4805488, at *1 (S.D.N.Y. Oct. 12, 2021).

The motion does not indicate any particular expertise or experience the lawyers on this matter had with respect to copyright infringement.  The Court finds a rate of $500 to be reasonable for the principal on the matter, $335 for the counsel and associate, and $100 for the paralegals.  *See Prepared Food Photos, Inc. v. Mikey's Famous Marinades Corp.*, 2023 WL 4867457, at *3 (E.D.N.Y. July 31, 2023) (approving fees of $450 an hour for lead counsel and $100 for paralegals).

Plaintiff billed a total of nearly 60 hours to this case.  That figure is excessive.  It includes appropriate time for drafting the complaint, but it also includes excessive time for administrative

matters such as reviewing the notice from the court setting the initial pretrial conference and reviewing the clerk's certificate of default.  Dkt. No. 40-1 at Ex. D.  There are extensive hours for legal analysis with no detail provided whatsoever.  *Id.*  Plaintiff also devoted extensive time to litigating issues regarding service of process when it would have been relatively easy and far more cost-efficient for Plaintiff to have taken the steps initially that it took ultimately to demonstrate that the address of the Defendant was not known even after reasonable diligence. *See* Dkt. No. 28 at 2.

"Generally, '[t]he time and labor required for seeking a judgment by default . . . based on the defendant's failure to plead or otherwise defend, as well as the level of skill required to perform the legal tasks in connection with it, are . . . *de minimis*.'"  *Samsonite IP Holdings*, 2021 WL 9036273, at *15 (quoting *Days Inn Worldwide, Inc. v. Amar Hotels, Inc.*, 2008 WL 2485407, at *10 (S.D.N.Y. June 18, 2008)).  Leaving aside some modest amount of time for the service of process issues, that should have been the case here.

"When a court concludes that the number of hours expended by counsel has been excessive, it may forego reviewing the timekeepers' individual time entries, and instead apply an across-the-board percentage reduction in compensable hours.'"  *Id.* (quoting *Malletier v. Artex Creative Intern. Corp.*, 687 F. Supp. 2d 347, 362–63 (S.D.N.Y. 2009)).  The Court finds that a 50% reduction is appropriate here and will award Plaintiff $13,317.50 in attorneys' fees (which takes into account the work done with respect to alternative service).

Plaintiff also asks for an award of costs.  Dkt. No. 40-2 at 18; *see* 17 U.S.C. §§ 505, 512(f).  "[T]he court in its discretion may allow the recovery of full costs . . . against any party." 17 U.S.C. § 505.  Plaintiff is granted an award of costs in the amount of $416.32 for the filing fee and postage.  Dkt. No. 40-1 ¶ 22; *id.* at 57.

**VI.    Equitable Relief**

Plaintiff also requests the following in equitable relief:

- Entry of a permanent injunction requiring Defendant and his officers, agents, servants, employees, owners and representatives, and all other persons to:

  - Disclose all websites and other locations where the Infringing Product is sold;

  - Disclose any and all products infringing upon Plaintiff's intellectual property;

  - Disclose the means by which the Infringing Product is manufactured and where the manufacturing occurs;

  - Turn over any and all of the Infringing Product and any other products infringing upon Plaintiff's intellectual property;

  - Provide an accounting of all inventory of the Infringing Product and any other products infringing upon Plaintiff's intellectual property;

  - Provide an accounting of any and all sales of the Infringing Product and any other products infringing upon Plaintiff's intellectual property;

  - Remove the Infringing Product and any and all other products infringing on Plaintiff's intellectual property from any and all websites or other points of sale;

  - Immediately cease any and all infringement of Plaintiff's intellectual property;

  - File with this Court and serve upon Plaintiff within thirty (30) days of the entry of an injunction a written report under oath describing in detail the manner and form in which Defendant complied with the injunctive relief set forth in this section, pursuant to 17 U.S.C. § 503;

- An order to Defendant to destroy the infringing articles in the possession of
  Defendant pursuant to 17 U.S.C. § 503;

- An order to Defendant to pay pre-judgment interest to Plaintiff for Plaintiff's
  copyright claims; and

- An order to Defendant to pay post-judgment interest to Plaintiff pursuant to 28 U.S.C.
  § 1961.

Dkt. No. 40-2 at 18–19.

A court may enter a permanent injunction, after determining that the plaintiff has met the threshold inquiry of actual success on the merits, *see Prepared Food Photos*, 2023 WL 4867457, at *4, if the plaintiff has demonstrated "(1) that it suffered an irreparable injury; (2) that remedies available at law are inadequate to compensate for that injury; (3) that the balance of hardships between the parties warrants a remedy in equity for the plaintiff; and (4) that the public interest would not be disserved." *Spin Master*, 463 F. Supp. 3d at 376 (quoting *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006)). A permanent injunction ordering all of Plaintiff's requested relief is appropriate here, as all factors weigh in Plaintiff's favor. First, Plaintiff has demonstrated that he has suffered irreparable injury and, absent an injunction, will continue to do so as a result of Defendant's conduct. Dkt. No. 1 ¶ 48. The "threat of continuing violations, as demonstrated by [Defendant's] default, qualifies as irreparable harm under the *eBay* standard." *Streamlight, Inc. v. Gindi*, 2019 WL 6733022, at *8 n.9 (E.D.N.Y. Oct 1, 2019) (quotation marks omitted), *report and recommendation adopted*, 2019 WL 6726152 (E.D.N.Y. Dec. 11, 2019); *Ideavillage Prod. Corp. v. Bling Boutique Store*, 2018 WL 3559085, at *5 (S.D.N.Y. July 24, 2018). Second, a plaintiff also has "no adequate remedy at law where, absent and injunction, the defendant is likely to continue" infringing. *Pearson Educ., Inc. v. Vergara*,

2010 WL 3744033, at *4 (S.D.N.Y. Sept. 27, 2010).  Defendant's default makes it likely that they will continue infringing on Plaintiff's copyrights.  *Cf. id.* ("A court may infer from a defendant's default that it is willing to, or may continue its infringement.").  Third, Defendant, as an infringer, also cannot identify any hardship to weigh against Plaintiff's hardships.  *WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275, 287 (2d Cir. 2012) ("It is axiomatic that an infringer . . . cannot complain about the loss of ability to offer its infringing product.").  In addition, "the balance of hardship [factor] favors Plaintiff where, as here, Defendant has failed to appear and thus identify any legitimate hardship."  *Prepared Food Photos*, 2023 WL 4867457, at *5.  Finally, a permanent injunction enforcing Plaintiff's copyrights would serve the public interest "as the public has a compelling interest in protecting copyright owners' marketable rights to their work so as to encourage the production of creative work."  *Sadowski*, 2023 WL 2707096, at *8 (quoting *Wareka v. Dryluxe LLC*, 2022 WL 2467544, at *4 (E.D.N.Y. Apr. 7, 2022)).

Because Plaintiff has satisfied the factors for a permanent injunction, the Court will issue injunctive relief.  "However, while Plaintiff has demonstrated that a permanent injunction is warranted in this case, the language of the permanent injunction is far too broad."  *Spin Master*, 463 F. Supp. 3d at 377.  Title 17 U.S.C. § 503 sets forth equitable remedies which courts may impose upon a finding of a copyright violation.  Plaintiff's proposed language would require Defendant to turn over, disclose, provide an accounting of, and remove all products infringing on *any* intellectual property right of Plaintiff's.  Such an injunction would not be "narrowly tailored," *Omega SA v. 375 Canal, LLC*, 984 F.3d 244, 259 (2d Cir. 2021) (quoting *Guthrie Healthcare Sys. v. ContextMedia, Inc.*, 826 F.3d 27, 46 (2d Cir. 2016)), as it would "exceed[] the . . . infringement upon [Plaintiff's] rights," *Starter Corp. v. Converse, Inc.*, 170 F.3d 286, 300 (2d Cir. 1999), and "prohibit generally all unlawful activity," *Sterling Drug, Inc. v. Bayer AG*, 14

F.3d 733, 749 (2d Cir. 1994).  Therefore, pursuant to 17 U.S.C. §§ 502 and 503, the Court issues

a permanent injunction ordering Defendant, its respective officers, agents, servants, employees,

and any other persons who are in active concert or participation with the foregoing,[5] to:

- Disclose all websites and other locations where the Infringing Product is sold;

- Disclose the means by which the Infringing Product is manufactured and where the manufacturing occurs;

- Provide an accounting of all inventory of the Infringing Product;

- Provide an accounting of any and all sales of the Infringing Product;

- Remove the Infringing Product from any and all websites or other points of sale;

- Cease infringing on Plaintiff's Copyrights through sale of the Infringing Product; and

- File with this Court and serve upon Plaintiff within thirty (30) days of the entry of this injunction a written report under oath describing in detail the manner and form in which Defendant complied with the injunctive relief set forth in this section, pursuant to 17 U.S.C. § 502(a).[6]

The Court also orders Defendant to destroy all inventory of the Infringing Product, 17

U.S.C. § 503(b); *Rogers v. Koons*, 960 F.3d 301, 313 (2d Cir. 1992), and to pay post-judgment

interest consistent with 28 U.S.C. § 1961(a).[7]

---

[5] As to persons enjoined, Federal Rule of Civil Procedure 65(d)(2) permits injunctions to be issued only to those who receive actual notice of the injunction, including "(A) the parties; (B) the parties' officers, agents, servants, employees, attorneys; and (C) other persons who are in active concert or participation with anyone described in Rule 65(d)(2)(A) or (B)."

[6] Under 17 U.S.C. § 502(a), the Court may "grant . . . final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright."

[7] Plaintiff makes a request for prejudgment interest, but offers no argument in support of that relief or calculation to the rate at which it is to be awarded or the period during which interest would accrue.  Dkt. No. 40-2, at 19.  The Court has discretion whether to award prejudgment interest.  *See Samsonite IP Holdings*, 2021 WL 9036273, at *18.  Given the absence of any argument in support of that relief, the Court declines to grant it.  *See Sadowski*, 2023 WL

**CONCLUSION**

For the reasons stated above, the motion for default judgment is GRANTED.  The Court

orders Plaintiff to file a proposed default judgment and injunction consistent with this Opinion

by no later than March 25, 2024.

The Clerk of Court is respectfully directed to close Dkt. No. 40.


SO ORDERED.

Dated: March 18, 2024
       New York, New York                    _____
                                                      LEWIS J. LIMAN
                                                United States District Judge

---

2707096, at *8.